## SAMUEL HOUGHTON & another *vs.* THE MANUFACTURERS MUTUAL FIRE INSURANCE COMPANY.

A policy of insurance against loss of a woollen factory by fire contained this proviso: "If the representations made in" the application of the assured for insurance "do not contain a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property insured, so far as the same are known to the said applicants, and are material to the risk; or if the situation or circumstances affecting the risk thereupon shall be so altered or changed, by or with the advice, agency or consent of the assured, or their agent, as to increase the risk thereupon, without the consent of this company," (the underwriters) "this policy shall be void." There were annexed to the application of the assured various questions by the underwriters, and a notice that it was expected that the answers thereto would meet the requirements of the underwriters' office; one of which requirements was, that an examination should be had of the insured premises, thirty minutes after work. Among the written answers of the assured to said questions were these: The factory is worked from "5 o'clock A. M. to 8½ o'clock P. M. Sometimes extra work will be done in the night." "No watch is kept in or about the building; but the mill is examined thirty minutes after work."

*Held,* that the representations of the assured were legally adopted and embodied in the policy, as part of the contract, to the same effect as if they had been therein set forth at large.

*Held also,* that although the answers of the assured were representations, rather than warranties, and were therefore sufficient, if the statements therein, of the facts relied on as the basis of the contract, were made in good faith, and were substantially true and correct, as to existing circumstances, and were substantially complied with, so far as they were executory; yet that, subject to this qualification, it was a condition precedent to the liability of the underwriters, that the answers should contain a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property insured, so far as known to the assured, and material to the risk.

*Held also,* that although the assured were themselves the owners and occupants of the property insured, and made the application for insurance, yet the question whether they knew certain facts and circumstances respecting it, which were omitted, or not accurately stated, in their answers, was a question of fact to be left to a jury.

*Held also,* that the representations made by the assured, as to certain usages and practices observed at the factory, concerning the modes of conducting their business, and the precautions taken to guard against fire, amounted to a stipulation that such modes of conducting their business should substantially continue to be adopted, and such precautions substantially continue to be taken, during the term of insurance; and that a discontinuance thereof by the assured, or by those entrusted by them with the management of the property, without the consent of the underwriters, would render the policy void, by virtue of the proviso therein respecting an alteration or change in the situation or circumstances affecting the risk

*Held also,* that the answers of the assured were to be construed with reference to the requirements of the underwriters, as specified in the notice accompanying the questions; and that a mere literal conformity and compliance would not be sufficient.

*Held also,* that the assured were bound, by their representation that the mill was examined thirty minutes after work, to make such examination thirty minutes after the extra work, as well as after the other work.

*Held also,* that the question, what is a cessation of work at the factory, from which the thirty minutes are to be computed, is a question for the jury, under all the circumstances of each particular case.

ASSUMPSIT on a policy of insurance against damage or loss by fire. The policy was dated July 1st 1843, and the defendants thereby insured Samuel Houghton & Co. " to the amount of $14,000, viz: $2,000 on one undivided half of the woollen mills and fixtures by them occupied, situated in Grafton, Mass.; $2,000 on machinery therein; $6,000 on stock therein; and $4,000 on stock in the wool-house building; the risk ending on the first of January 1844, at noon." There was this proviso in the policy, viz: " If the representations made" (by the plaintiffs, in their application for insurance,) "do not contain a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property insured, so far as the same are known to the said applicants, and are material to the risk; or if the situation or circumstances affecting the risk thereupon shall be altered or changed, by or with the advice, agency or consent of the assured, or their agent, so as to increase the risk thereupon, without the consent of this company," (the defendants,) " this policy shall be void." The representations referred to in this proviso were contained in the written answers made by the plaintiffs to thirty six printed questions annexed to the policy. At the end of these questions, the following notice was also printed : " It is expected that the answers to the aforegoing questions will meet the requirements of this office, which are," (among others) " that a cask of water, and buckets, will be kept in each story," and " that an examination will be had, say thirty minutes after work." Among the aforesaid questions and answers were these : " 13. What provision is made for extinguishment of fires, by engines, pumps, water-casks, buckets, or otherwise?" *Answer.* " Water-casks are placed in each room,

containing water, and pails are kept in each room. There is a force pump used to convey water into the second and third stories." " 14. Is a watch kept constantly in the building? If no watch is constantly kept, state what is the arrangement respecting it." *Answer.* " No watch is kept in or about the building, but the mill is examined thirty minutes after work." " 21. During what hours is the factory worked?" *Answer.* " 5 o'clock A. M. to 8½ o'clock P. M. Sometimes extra work will be done in the night."

At the trial before the chief justice, it was admitted by the defendants, that the woollen mill was burnt on the night of the 30th of December 1843, and that property, of the value stated in the policy, belonging to the plaintiffs as stock, was consumed by the fire; and it was admitted by the plaintiffs, that a considerable part, in value, of said stock, consisted of wool partly manufactured, which was stored in the upper loft, attic or garret, of the principal building.

After the plaintiffs had made out a *prima facie* case, the defence was stated to be as follows: That the policy and the application were to be construed together, in order to determine what was the contract of the parties : That the statements made in the application, and especially the answers to the usual questions, were stipulations, in the nature of conditions precedent, for the truth of the matters stated, so far as they were material to the risk, and that if not true, so far as they were material to the risk, although not wilfully false, nor made with intent to deceive, they discharged the underwriters : That, so far as these answers stated usages, practices, and modes of conducting business at that factory, in the nature of precautions against fire, and tending to diminish the risk of fire, the assured were bound to observe all such practices and modes of conducting their business, and continue to use all such precautions; and that if they failed so to do, the underwriters were discharged.

The first ground, relied upon by the defendants, was an alleged misrepresentation as to the structure of the main building and the uses to which the several stories were applied; and that no mention was made of using the garret for storing wool, &c

The second ground respected the precautions to be taken, and usages observed, during the term of insurance; to wit, that no examination was made of the mill, at or about thirty minutes after the close of work at night, conformably to the representation in answer to the 14th question. Another ground was, that no water-cask was placed or kept in the fourth story.

Evidence was offered by the defendants, tending to establish the facts in regard to these several points of their defence.

In reply to these grounds of defence, the plaintiffs contended, that in point of law the several statements made in the application were merely representations, and that, if fairly made, and true in substance, though not strictly accurate, there was nothing to avoid the policy on that ground. That if a statement as to circumstances and general condition of things is substantially correct, and not false in any particular material to the risk, the assured may recover: That these statements were not warranties; and that though the application was referred to in the policy, the answers were referred to as "representations," and not as warranties, and that if it should appear, upon the whole evidence, that these representations were in all material respects true, both as to the facts as they then existed, and were expected to exist during the continuance of the risk, the plaintiffs would have a right to recover.

The plaintiffs offered evidence tending to rebut the evidence offered by the defendants, and to prove the substantial truth of the representations, in all material points. But they did not offer proof (nor claim to recover on the ground) that any examination of the factory was made, half an hour after the actual termination of the work, when extra work was done there after half past 8 o'clock P. M., though it was in evidence, that for a part of the time, and for a month next preceding the time of the fire, "the factory had been worked, in some of its departments, for some time later than half past 8 o'clock at night."

A nonsuit was entered, subject to the opinion of the whole court, after the chief justice had made a ruling upon the first seven of the points hereinafter decided by the court.

*C. Allen & Washburn,* for the plaintiffs. The clause in the

policy, that the statements in the plaintiffs' answers should contain a true and full exposition, " so far as is known by the applicants," was introduced for the purpose of altering the law previously applied to representations. *Macdowall* v. *Fraser*, 1 Doug. 260. 1 Phil. Ev. (2d ed.) 214, 215. The parties intended that none but fraudulent representations should avoid the policy ; and the construction should be according to that intent. 1 Phil. Ins. (2d ed.) 231, 232. 3 Stephens Nisi Prius, 2093. But it was ruled at the trial, that the truth of the representations was a condition precedent to the plaintiffs' right of recovery.

The strictness which is required in contracts of marine insurance is not applied to insurance against fire ; because the risk .s generally assumed after an actual examination of the insured premises by skilful agents of the underwriters ; and open and notorious facts, therefore, are not required to be stated by the assured. 1 Phil. Ins. (2d ed.) 233. 3 Kent Com. (3d ed.) 373.

It is sufficient if a representation be true in *substance*, and its not being inserted in the policy as a warranty shows that the underwriters do not require it to be literally true. 1 Marsh. Ins. (3d ed.) 458. Beaumont on Ins. 49. *De Hahn* v. *Hartley*, 1 T. R. 345. *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 72. *Mackie* v. *Pleasants*, 2 Binn. 371. *Delonguemare* v. *Tradesmen's Ins. Co.* and *Stebbins* v. *Globe Ins. Co.* 2 Hall, 589, 632.

A change in the condition of the property, if temporary, and made without the knowledge of the assured, does not avoid a policy which contains no warranty. 1 Phil. Ins. (2d ed.) 414, 415. *Catlin* v. *Springfield Fire Ins. Co.* 1 Sumner, 434. *Shaw* v. *Robberds*, 6 Adolph. & Ellis, 75. *Dobson* v. *Sotheby*, Mood. & Malk. 90. Underwriters are not discharged by the carelessness of the servants of the assured. *Copeland* v. *N. E. Marine Ins. Co.* 2 Met. 432. 3 Stephens Nisi Prius, 2123. Hammond on Ins. 40. 1 Phil. Ins. (2d ed.) 585, 634. *Waters* v. *Merchants Louisville Ins. Co.* 11 Pet. 213.

The representation, that the mill was examined thirty minutes after work, referred to the past only ; or if it related to the

future, it did not extend to the extra work. *Snyder* v. *Farmers' Ins. & Loan Co.* 13 Wend. 92, and 16 Wend. 481. Hammond on Ins. 85, 86. 3 Stephens Nisi Prius, 2083, 2120.

It was a question for the jury, whether the risk was increased by the omission to examine the mill thirty minutes after work. *Columbian Ins. Co.* v. *Lawrence,* 2 Pet. 25. *Stetson* v. *Massachusetts Mutual Fire Ins. Co.* 4 Mass. 330. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535. *Grant* v. *Howard Ins. Co.* 5 Hill, 10. *Livingston* v. *Maryland Ins. Co.* 6 Cranch, 274. *M'Lanahan* v. *Universal Ins. Co.* 1 Pet. 170. *Deblois* v. *Ocean Ins. Co.* 16 Pick. 308.

*Newton,* for the defendants. The reference, in the policy, to the application and answers, made them a part of the contract. *Blaney* v. *Rice,* 20 Pick. 62. *Magoun* v. *Lapham,* 21 Pick. 135. *Davis* v. *Rainsford,* 17 Mass. 207. *Routledge* v. *Burnell,* 1 H. B. 254. *Oldman* v. *Bewicke,* 2 H. B. 577, *note. Tarleton* v. *Staniforth,* 5 T. R. 695. *Worsley* v. *Wood,* 6 T. R. 710. The statements in the answers are to be regarded as warranties, and not as representations merely. *Kenyon* v. *Berthon,* 1 Doug. 12, *note.* And if what the plaintiffs knew, or must be supposed to have known, was wrongly stated, the policy is thereby avoided. *Macdowall* v. *Fraser,* 1 Doug. 260. *Carter* v. *Boehm,* 3 Bur. 1909. *New York Bowery Fire Ins. Co.* v. *New York Fire Ins. Co.* 17 Wend. 359. *Shirley* v. *Wilkinson,* 1 Doug. 306, *note.*

The contract must be understood to have been, that the usages at the mill, as to precautions against fire, should be continued ; especially as there was a provision that no change should be made which would increase the risk. And the answers of the plaintiffs are to be construed with reference to the defendants' requirements, which were attached to the application. The examination of the mill, thirty minutes after the cessation of the work, was as necessary when extra work was done as at other times, and the omission to make the examination discharged the defendants.

SHAW, C. J. The contract of insurance against fire, as used and practised by the mutual insurance companies in this Com-

monwealth, depending upon the operation and effect of the act
of incorporation and the by-laws, and the policy and written
representations in each particular case, is somewhat new and
peculiar ; and the rules applicable to it have not been very fully
and definitely settled by judicial decisions. For this reason, as
-well as on account of its importance to the parties, in point
of amount, it is necessary to consider the present case with care.
A nonsuit was ordered at the trial, subject to the opinion of the
court upon various questions of law, which it was supposed
would embrace the whole merits of the case. The court being
of opinion, that in one particular the questions, decided as ques-
tions of law, should have been left to the jury, on the evidence,
as questions of fact, the nonsuit is to be set aside and a new
trial ordered.

Upon several questions of law discussed at the argument, the
court have come to an opinion, which it may be proper and con-
venient to the parties to state, in order to regulate the course
inquiry on another trial.

1. The court are of opinion that the policy, by the manner
in which it refers, in terms, to the application and representa-
tions, does legally adopt and embody them as part of the con-
tract, to the same effect as if they were recited and set forth at
large in the policy.

2. That the application and the various answers contained in
it, being termed "representations" in the policy, are rather to be
regarded as having the legal effect of representations than of
warranties, as understood in the law of marine insurance, though
partaking in some measure of the character of both. They are
like representations, in requiring that the facts stated shall be
substantially true and correct, and, so far as they are executory,
that they shall be substantially complied with ; but not like war-
ranties, in requiring an exact and literal compliance. It is
enough, therefore, if these statements, relied on as the basis of
the contract, are made in good faith and without intent to
deceive ; that they are substantially true and correct as to exist-
ing circumstances, and substantially complied with, so far as
they are executory and regard the future.

3. With the qualification above mentioned, the fact, that the representations made in the application do contain a *just, full* and *true* exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property insured, so far as the same are known to the applicants, and are material to the risk, is a condition precedent to the liability of the defendants; and if, in any particular material to the risk, they do not contain such *just, full* and *true* exposition, the company are not bound.

4. The proviso in the policy, that it shall be void, if the application does not contain a just, full and true exposition of all the facts, has this limitation; " so far as the same are known to the applicants."

At the trial, it was stated, as a conclusion of law, that if the applicants and assured were owners of the estate, they must be presumed to know certain facts respecting it. The court are of opinion that this was erroneous, and that the question whether the facts, if misrepresented, were known to the applicants, was a question of fact, to be left to the jury upon the evidence. The considerations referred to, as founding a legal conclusion of knowledge, are all fit and proper to be submitted to a jury; such as, that the assured and applicant is himself the owner of the property, and may be presumed to be acquainted with its condition; that the matter relates to things open and visible, things capable of distinct knowledge and not depending upon estimate, opinion, or mere probability; things in respect to which an owner is bound in honesty and good faith to know, takes upon himself to know, and usually does know; these, and all other pertinent evidence bearing on the question, are to be left to the jury, with directions that if they are satisfied from all the evidence, and can reasonably infer, that the assured did know the fact as it really existed, in regard to which misrepresentation is imputed, they are to find that he did know it; otherwise, not.

5. There is another clause in the policy, to which the attention of the court was drawn at the argument, which is this: " If the situation or circumstances, affecting the risk upon the

property insured, shall be altered or changed, by or with the advice, agency or consent of the assured or their agent, so as to increase the risk thereupon, without the consent of the company, the policy shall be void." The court are of opinion, that this was a stipulation and condition, without a substantive compli ance with which, the company, from the time of its happening, would cease to be bound by the contract. This provision binds the assured, not only not to make any alteration or change in the structure or use of the property, which will increase the risk, but prohibits them from introducing any practice, custom or mode of conducting their business, which would materially increase the risk, and also from the discontinuance of any pre-caution, represented in the application to be adopted and prac-tised with a view to diminish the risk. The clause in question, as well as the preceding clause, refers to the application and the representations contained in it. Taking this clause with the representations, we think the legal effect is, that so far as these representations set forth certain usages and practices observed at the factory, as to the mode of conducting their busi-ness, and as to precautions taken to guard against fire, it is not only an affirmation that the facts are true at the time, but in effect a stipulation, that as far as the assured, and all those entrusted by them with the care and management of the prop-erty, are concerned, such modes of conducting the business shall be substantially observed, and such precautions substan tially continue to be taken, during the continuance of the policy.

By a *substantial* compliance, we mean the adoption of precau-tions, if not exactly those stated in the application, precautions intended to accomplish the same purpose, and which may be reasonably considered equally or more efficacious. For instance ; when it is stated that ashes are taken up in iron hods, it would be a substantial compliance, if brass or copper were substituted. So, when it is represented that casks of water, with buckets, are kept in each story, if a reservoir were placed above, with pipes to convey water to each story, and found by skilful and experi enced persons to be equally efficacious, it would be a substan tial compliance.

6. But in construing these representations, both as to existing facts, and as to future precautions to be taken, a mere literal conformity and compliance would not be sufficient. Good faith, as well as the terms of the contract, requires that it shall be a *full* and *just*, as well as *true* exposition. These answers are to be construed in reference to the requirements of the office, and specified on the back of the application, and referred to in the questions; and they are to be so construed as to meet these requirements, and conform to them, when it can be done consistently with the terms of the answers. For instance ; the answer to No. 13 states that water-casks are placed in each room. This answer would be literally true, if a small vessel, having the shape and bearing the name of a cask, were so kept; but it would not be a full and just statement, nor a substantial compliance with the undertaking of the assured. That undertaking requires a substantial compliance, by keeping a cask of water of a size adapted to the required security, and holding a sufficient quantity to extinguish a sudden fire beginning to kindle in such story.

7. One other point was taken, respecting which an opinion was asked for and given at the trial. It related to the representation and the practice in respect to the examination of the factory. The representation was contained in the answer to the 14th question, as follows: "Is a watch kept constantly in the building? If no watch is constantly kept, state what is the arrangement respecting it." *Ans.* "No watch is kept in or about the buildings; but the mill is examined thirty minutes *after work.*" This question referred to the requirements of the office, on the last page of the representation, amongst which is this, viz: "that an examination will be had, say thirty minutes after work."

Question 21st was this : "During what hours is the factory worked ?" The answer was, "from 5 o'clock A. M. to 8½ o'clock P. M. Sometimes extra work will be done in the night."

Two questions were made at the trial. First ; whether this representation of the usual practice amounted to any condition

or stipulation that it should be continued. It was ruled at the trial, and the whole court are now of opinion, that as this examination was manifestly intended as a substitute for a constant watch; as it was one which the assured had it in their power to make or cause to be made; as it was one of the precautions tending to secure the property against danger of fire, and tending to its safety; it was one which, as a general practice, the assured were bound to follow; although an occasional omission owing to accident, or to the negligence of subordinate persons, servants or workmen, not sanctioned nor permitted by the assured, or by their superintendent, manager or agent, might not be a breach or non-compliance.

The second question under this clause regarded the time at which the examination was to be made. The question as understood at the trial, was this; whether, if the factory work was continued during extra hours in the night, that is, after half past 8 P. M., the examination should be made at half an hour after the cessation of actual work, or half an hour after the time fixed in the 21st answer, as the usual hour of the cessation of work. On this question, considering the purpose of the examination, and considering that the object of the examiner would be, by the sense of sight or smell, to detect any latent fire or fire beginning to kindle, arising from sparks from the extinguished lamps, spontaneous combustion, friction of machinery, or otherwise; as this could be best accomplished after the mills were stopped, and the operation of the factory for the night had ceased, and the persons employed in it had left, I was of opinion that the examination must be made at thirty minutes after the cessation of the actual work of the factory, and that an examination thirty minutes after the time fixed by the 21st answer, as the usual time for closing work, if the factory did continue in operation, was not a substantial compliance with this stipulation. And the court are of opinion, that this direction, in the case supposed, was right, and that such is the correct construction of the contract. The assured had represented that the usual hour for the cessation of work was half past eight; yet, having represented that the factory would sometimes be worked

during extra hours in the night, they had a right so to work, without impairing the contract.    But if they thought fit, for any cause, to change the hours of work, so that it should continue to a later hour in the night, they must see that the examination be made at thirty minutes after the actual cessation of work. .

8. But another question is now presented, which was not distinctly raised at the trial, and in regard to which, the evidence was not fully reported; and it is this:    What is the cessation or termination of work; or, in other words, what is the meaning of *thirty minutes after work*, within the meaning of the answer to the 14th question?    As there is to be a new trial on other grounds, we think it proper to state the opinion of the court upon this point; although, through misapprehension of the counsel, or of the court, or otherwise, it was not raised at the trial, or presented on the report.

The question as to what is a termination of work, within the meaning of this contract, is partly a question of law and partly a question of fact.    The intentions of the parties, if they can be ascertained, are to govern ; and these are to be learned from the language used, construed in connection with every part and clause in the contract, the subject matter respecting which they are used, and the obvious purposes of each stipulation.

That the assured were bound to make an examination, at thirty minutes after work, is the construction of law on the contract; what is the cessation of work, is a question of fact for the jury, depending upon the circumstances, and having in view the object and purpose of the stipulation, which was, to have an examination at such time as will conduce to the safety of the building.    As some of the sources of danger are the continuance of fires and lights, and the friction of machinery, so long as the general work of the factory and operation of the machinery continues, a jury must find that the work had not then ceased, and could not be warranted in finding otherwise.    If, on the contrary, the gate were shut, the machinery all stopped, the fires and lights extinguished, and the operatives generally retired, it could hardly be said that the work had not ceased, although

11 *

one or two persons should remain to do something which should create no danger of fire. The fact to be looked to is not that the persons employed have all left, or that the lights are all extinguished, or that the machinery has wholly stopped, but the termination of the time during which the factory is worked; and this is an inference of fact, which may be influenced, more or less, by all these considerations.

Now, between the full operation of the factory, and the entire cessation of work, extremes may be supposed on either hand, respecting which there could be no doubt. There may be various intermediate stages, in which it would be the duty of the jury to determine, upon the particular combination of cir cumstances, whether they constituted a cessation of the working of the factory, or not. If the general work of the factory has ceased, although a single machine may remain in operation for a special purpose, we think a jury should be instructed, that if such machine should cause no danger of fire, the examination should be made at thirty minutes after the cessation of the general work, and not after the stopping of the particular machine; and this the rather, because the contract stipulates but for one examination; and an examination after the cessation of the general work, being apparently most for the interest of both parties, may be presumed to be most conformable to their intentions. And so in the various cases, it will be for the jury to say, under the direction of the court, taking into view the purposes of the examination, and the nature of the work done, and the risk attending it, whether, within the meaning of this contract, the work of the factory, in the particular case, had terminated.

*New trial ordered.*